## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

BRIAN DICKERSON,

                Plaintiff,

vs.

PLZ AEROSCIENCE CORPORATION
n/k/a PLZ CORP. and HAZMAT
EMERGENCY RESPONSE AND
REMEDIATION, INC.,

                Defendants.

CIVIL ACTION

FILE NO.: 1:20-cv-03618-MHC

## DEFENDANT PLZ CORP.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

This is a premises liability and negligence action. Plaintiff alleges he sustained injuries while performing hot work demolition for non-party CND Services, LLC ("CND") on a premises Defendant PLZ Corp. ("PLZ") owned in Dalton, Georgia (the "Facility"). While CND was removing pipes at the Facility, CND released approximately 30 gallons of "wastewater" and flooded the floor at a depth of 3-4 inches.[1] Neither Plaintiff nor CND notified PLZ they flooded the hot work area with

---

[1] While PLZ does not concede the accuracy of Plaintiff's testimony regarding the wastewater spill, PLZ accepts Plaintiff's account of events given the procedural posture of this Motion.

1

wastewater, and neither Plaintiff nor CND performed the minimum required safety checks to see if the wastewater presented a fire safety hazard.  Instead, a CND employee lit a blowtorch, causing "hot slag" to land in the wastewater, igniting the flash fire that injured Plaintiff.  As Plaintiff's own expert testifies, CND's actions fell below the minimum safety requirements for hot work set forth by the National Fire Protection Association ("NFPA").

Plaintiff is suing PLZ contending PLZ's negligence caused his injuries even though PLZ did not know about the wastewater flooding, and even though Plaintiff and CND could have avoided causing the fire had they acted with reasonable care.

PLZ is entitled to summary judgment.  First, this is the rare case when causation warrants summary judgment. Plaintiff's own expert opined that, even if PLZ intended to leave wastewater in its industrial piping, the fire could have been avoided if CND followed safety procedures or exercised common sense.  All CND had to do to identify the fire safety hazard was wave its multi-gas meter over the pool of wastewater. Instead, a CND employee lit a blowtorch and proceeded to cut metal right above the wastewater, thereby precipitating the fire that caused Plaintiff's injuries.

Second, for two reasons, PLZ did not owe any duty to Plaintiff at the time of his injury. A property owner has no duty to employees of others invited onto the property owner's premises if 1) the owner has relinquished possession of the premises,

2

and 2) the owner does not have the right and does not actually control or direct the work done. Here, PLZ had no duty to Plaintiff because CND controlled Plaintiff's work area and PLZ had no right to control or direct Plaintiff's work.

In addition, a property owner has no duty if someone is hired for the express purpose of performing demolition work and the injury arose from or was incidental to that work. Here, PLZ had no duty to Plaintiff because Plaintiff was hired to perform demolition work and was injured by the ignition of liquid and/or gases allegedly released by Plaintiff's or his employer's work.

Third, even if PLZ owed Plaintiff a duty, PLZ did not breach any such duty. A plaintiff must establish the defendant's superior knowledge of the hazard or defect causing injury. Here it is undisputed PLZ had no knowledge of the spilled wastewater prior to Plaintiff's injury. In fact, the undisputed evidence is that only Plaintiff and his employer CND knew about the spill.

Fourth, Plaintiff and his employer violated their duty to inspect their workplace and determine whether it was safe. That failure bars any recovery against PLZ. At a minimum, Plaintiff assumed the risk when he continued to perform demolition work without performing any safety tests despite a change in conditions.

For all of these reasons – or any one of them – Plaintiff cannot establish the essential elements of his claims. PLZ is entitled to summary judgment.

## STATEMENT OF UNDISPUTED FACTS

**I.    PLZ Hires CND To Perform Demolition Work; CND Controls All Aspects of the Demolition Work and Controls the Demolition Area.**

At all relevant times, CND employed Plaintiff to install and decommission various facility sites. (*See* Brian Dickerson Deposition Transcript ("Pl. Dep."), p. 14:1-20, attached as Exhibit "1"). DG Marshall Associates, Inc., hired CND to provide limited services in connection with the decommissioning of the Facility. (*See* Affidavit of Noel Dickerson ("N. Dickerson Affid."), ₱ 3, attached as Exhibit "2").

PLZ did not train Plaintiff or tell Plaintiff which materials to use onsite. (*See* Pl. Dep*.,* p. 62:1-11, attached as Exhibit "1"). Noel Dickerson, Plaintiff's employer,[2] provided Plaintiff with all training or other information regarding performing his job and equipment to be used. (*See Id.* at p. 62:14-18).

**II.    On the Morning of the Incident, PLZ and CND Together Cleared the Room for Hot Work; Plaintiff's Expert Says They Did So Properly.**

CND began work at the Facility on January 6, 2020 and this work included cutting and grinding metal using saws, welding torches, metabo, and cut-off blades. (*See* N. Dickerson Affid., ₱ 3, attached as Exhibit "2"; Pl. Dep., p. 24:4-12, attached as Exhibit "1"). This type of work is known as "hot work." (*See* N. Dickerson Affid., ₱

---

[2] Noel Dickerson is the CEO of CND Services, LLC. (*See* N. Dickerson Affid., ₱ 2, attached as Exhibit "2").

3, attached as Exhibit "2"). PLZ contracted with Defendant Hazmat Emergency Response and Remediation, Inc. ("HERR") to remove flammable liquids and hazardous substances from the Facility, including the flushing of all the lines and tanks in the Facility. (*See* Plaintiff's Complaint, ℙ 7; PLZ's Answer, ℙ 7; Dewayne Miller Deposition Transcript ("Miller Dep."), pp. 31:18-32:14, attached as Exhibit "3").

On February 5, 2020, Plaintiff was working at the Facility. (*See* Plaintiff's Complaint, ℙ 5; PLZ's Answer, ℙ6).  Also on that day, CND was scheduled to perform hot work in mixing room 2 at the Facility. (*See* N. Dickerson Affid., ℙ 5, attached as Exhibit "2").  Part of the hot work permitting process involved a walk-through inspection of mixing room 2 by Dewayne Miller, PLZ's Health, Safety, and Environmental Manager, and Noel Dickerson of CND.  (*See* N. Dickerson Affid., ℙ 6, attached as Exhibit "2"; Miller Dep., pp. 15:10-14, 50:14-18, attached as Exhibit "3").

During the walk-through, both Mr. Miller and Noel Dickerson had multi-gas meters that they used to take readings in mixing room 2.  (*See* N. Dickerson Affid., ℙ6, attached as Exhibit "2"; Miller Dep., p. 52:11-16, attached as Exhibit "3").  The meter Noel Dickerson used on behalf of CND was a GasAlert Microclip made by Honeywell. (*See* N. Dickerson Affid., ℙ 6, attached hereto as Exhibit "2").  This is an industry standard four-gas detector model that measures the %LEL (lower explosive limit) percentages of various gases, oxygen, hydrogen sulfide, and carbon monoxide.  (*See*

*Id.*).

During the walk-through, both Mr. Miller and Noel Dickerson took meter readings at various levels, including chest and floor levels, in mixing room 2.  (*See Id.* at ⁋ 7).  Specifically, Mr. Miller did the following during the walk-through with Noel Dickerson:

    °     Entered the room and took readings at chest height and ground level.

    °     Stood up, moved forward about 8-12 feet and repeated the process.

    °     Checked the base of any tanks in mixing room 2 and put the meter up to any valves to take readings.

    °     Opened any pipes in the mixing room to take readings.

    °     Went up on the mezzanine and opened all tanks and placed meter inside of same to take readings.

    °     Proceeded to east side of room and opened the valves on all pipes on that side of the room and took readings.  Once a pipe was cleared, Mr. Miller would close the valve and go to the next one.

    °     After completing this process Mr. Miller wrote down his data and posted the hot work permit.

(*See* Miller Dep., pp. 51:4-52:10, attached as Exhibit "3").

During the walk-through process, neither the meter Mr. Miller used nor the CND

meter detected any harmful conditions, including the presence of explosive gases or elevated oxygen levels. (*See* N. Dickerson Affid., ⁋ 7, attached as Exhibit "2"; Miller Dep., p. 53:15-19, attached as Exhibit "3"). In addition, both Mr. Miller and Noel Dickerson inspected the hot work equipment and Mr. Dickerson signed off on the inspection indicating that the hot work equipment was in good repair. (Bryan Durig Deposition Transcript Vol. II ("Durig Dep. II"), pp. 42:2-43:6, attached as Exhibit "4").

Both Mr. Miller and Noel Dickerson permitted CND to perform hot work in mixing room 2. (*See* N. Dickerson Affid., ⁋ 8, attached as Exhibit "2"; Hot Work Permit, attached as Exhibit "5"; Durig Dep. II, pp. 35:24-37:12, attached as Exhibit "4"). Noel Dickerson verified "the above location has been examined, the precautions checked on the Required Precautions Checklist have been taken to prevent a fire, and permission is authorized for this work." (*See* Hot Work Permit, attached as Exhibit "5"). Mr. Dickerson also executed the Fire Watch Signoff on the hot work permit stating the "[w]ork area and all adjacent areas to which sparks and heat might have spread were inspected during the watch period and were found fire safe." (*See Id*.).

Plaintiff's own expert agrees PLZ and CND followed appropriate procedures in issuing the hot work permit and that, at that time, mixing room 2 was "clean." (See Durig Dep. II, pp. 33:23-34:12; 43:2-6, attached at Exhibit "4"). In other words, when PLZ turned over the room to CND, it had done everything it was supposed to have

done.  (See *Id*.).

**III.  After the Permit Issues, CND Controls the Room and the Work Performed Therein; CND Understood Its Responsibility To Monitor Room Conditions.**

Once the hot work permit issued to CND, PLZ turned over custody and control of mixing room 2 to CND and it was CND's responsibility to maintain the safety of that room while the hot work was being performed.  (*See* Miller Dep., p. 82:21-25, attached as Exhibit "3"; Affidavit of Dewayne Miller ("Miller Affid."), ℙ 5, attached as Exhibit "6").  Part of this responsibility involved CND monitoring air quality to keep the people in the area safe.  (*See* Pl. Dep., p. 80:8-15, attached as Exhibit "1").

CND had no expectation that any PLZ personnel would be in the work area with CND monitoring the safety of CND's employees. (*See Id*. at p. 80:16-18).  Indeed, no PLZ personnel entered mixing room 2 while the hot work was being performed and CND had authority to exclude other third-party contractors from entering mixing room 2 while the hot work was taking place.  (*See* Miller Affid., ℙ 6, attached as Exhibit "6").

CND used meters to monitor the air quality during the workday in mixing room 2. (*See* N. Dickerson Affid., ℙ 9, attached as Exhibit "2"; Pl. Dep., p. 55:10-23, attached as Exhibit "1").  One of the meters CND used on the day in question was brand new and Plaintiff took it out of the box and handed to Noel Dickerson who took it into mixing room 2 when he began work.  (*See* Pl. Dep., pp. 56:17-25, 58:4-6, 59:1-12,

attached as Exhibit "1").  Neither of the meters CND used in mixing room 2 on February 5, 2020 detected any harmful chemicals.  (*See* N. Dickerson Affid., ¶ 9, attached as Exhibit "2"; Pl. Dep., p. 87:21-22, attached as Exhibit "1").

Plaintiff testified he does not know if Noel Dickerson was taking periodic readings with his meter in mixing room 2 every 15 minutes on the day in question, but he should have been.  (*See* Pl. Dep., pp. 131:25-132:14, attached as Exhibit "1"). Continuous monitoring is required because conditions can change during the course of hot work that may cause an increase in %LEL in the environment.  (*See* Durig Dep. II, pp. 50:21-51:2; 64:16-19, attached as Exhibit "4").

## IV.   Thirty Gallons of Wastewater Floods the Room; Rather than Re-Meter, CND Lights a Blowtorch and Lets Hot Slag Fall Into that Wastewater.

At some point during the workday, Noel Dickerson was removing pipes in mixing room 2 with a pipe wrench and wastewater allegedly came out of the pipes and pooled on the ground.  (*See* Pl. Dep., p. 107:11-20, attached as Exhibit "1").  Plaintiff estimated that 30 gallons of wastewater accumulated 3-4 inches deep on the floor of mixing room 2. (*See Id*. at p. 125:6-10, 21-23).  The introduction of the wastewater into mixing room 2 raised the %LEL causing a change in the room's condition.  (*See* Durig Dep. II, p. 45:14-22, attached as Exhibit "4").

Despite the size of the alleged pool of wastewater, Plaintiff and other CND personnel were not concerned and took no steps to wash off the water or dilute it. (*See*

Pl. Dep., pp. 123:19-21, 124:13-21; 125:11-13, 128:24-129-2, attached as Exhibit "1"). Noel Dickerson likewise took no safety precautions regarding the wastewater: he did not inform PLZ of the spill, nor did he test the water with his meter or otherwise to make sure the liquid was not combustible before he lit his torch and continued the hot work. (*See Id.* at pp. 108:6-15, 110:15-24;  Durig Dep. II*,* p. 71:13-18, attached as Exhibit "4"). Only Noel Dickerson and the other CND personnel in mixing room 2 that day knew about the wastewater spill.  (*See* Pl. Dep.*,* p. 110:11-21, attached as Exhibit "1").

As PLZ was not notified of the event that changed the %LEL, it had no opportunity to determine whether the liquid that came out of the pipe and spilled onto the floor was safe.  (*See* Durig Dep. II, pp. 45:14-22; 84:2-7, attached as Exhibit "4").

## V.     By Ignoring a Material Change in Conditions, CND Acted Unreasonably and Proximately Caused the Fire that Injured Plaintiff.

According to Plaintiff's expert, Dr. Bryan Durig, the NFPA safety standards required Noel Dickerson, as the hot work operator, to cease hot work operations if unsafe conditions developed and notify someone at PLZ about the spill to reassess the situation in mixing room 2. (*See Id.* at pp. 66:4-19; 67:9-15; 94:20-95:8).  Had Noel Dickerson tested the wastewater with his meter, it would have detected any combustible fumes. (*See* Pl. Dep., pp. 110:25-111:6, attached as Exhibit "1"; Durig Dep. II, pp. 51:3-16; 52:1-14, attached hereto as Exhibit "4").

Despite the presence of approximately 30 gallons of what Plaintiff contends were highly flammable chemicals on the floor of mixing room 2, none of the meters that CND had present in that room alerted to any harmful conditions. (*See* Pl. Dep, pp. 107:21-108:5, attached as Exhibit "1"). There is no dispute the meters CND was using on February 5, 2020 were operational and running and if combustible gases had been present the meters should have alarmed. (*See Id.*). Either CND's meter was not where it should have been located to detect elevated %LEL or it was not operating properly at the time the liquid was introduced into mixing room 2 by CND. (*See* Durig Dep. II, pp. 51:3-16; 53:6-54:8, attached as Exhibit "4").

Plaintiff's own expert testified it was CND's fault they did not take the multi gas meter and measure the %LEL of the wastewater that came out of the pipe they opened during hot work. (*See Id.* at p. 54:4-8). Plaintiff's expert testified, had Noel Dickerson measured the %LEL of the wastewater that came out of the pipe, it would have detected elevated %LELs, and had Dickerson then not lit his torch, this accident would not have happened. (*See Id.* at pp. 52:1-14; 95:17-24).

Instead, despite the presence of approximately 30 gallons of untested wastewater standing in a pool on the floor of mixing room 2, Noel Dickerson proceeded to light his torch and resume the hot work. (*See* Pl. Dep, p. 108:6-15, attached as Exhibit "1"). Plaintiff was on fire watch. (*See Id.* at pp. 84:6-85:1). When he did return to cutting

11

with his torch, a piece of slag fell from the mezzanine where he was working and dropped to the floor resulting in a flash fire that lasted approximately 6 seconds. (*See Id.* at pp. 90:3-9, 91:21-92:8). As a result of the fire, Plaintiff received burns to his knees, back and neck. (*See Id.* at p. 93:6-14).

## VI. Plaintiff's Own Expert Testifies CND Contravened Controlling Safety Standards and Caused the Fire.

Plaintiff's expert testified NFPA 51B, "Fire Prevention During Welding, Cutting, and Other Hot Work," required Noel Dickerson, as the hot work operator, to cease hot work if unsafe conditions develop and notify management, the area supervisor, or the PAI for reassessment. (*See* Durig Dep. II, at pp. 66:4-19; 67:9-15, attached as Exhibit "4"). The standards required Noel Dickerson to get the PAI's approval to proceed when conditions change. (*See Id.* at pp. 64:20-25; 81:23-82:2).

The NFPA standards are designed to prevent hot work operators from making assumptions about whether an area is safe for hot work. (*See Id.* at p. 74:3-13). Noel Dickerson was required to comply with the standards and not assume a changed condition is safe. (*See Id.* at pp. 56:15-25; 74:3-13).

Noel Dickerson did not notify anyone 30 gallons of flammable wastewater spilled onto the ground underneath where he was doing hot work. (*See Id.* at p. 67:16-24). As Plaintiff's expert testified, Noel Dickerson assumed the water was safe, but unfortunately it was not. (*See Id.* at pp. 74:14-75:4).

## ARGUMENT AND CITATION TO AUTHORITY

### I.     Standard of Review

The Court may grant summary judgment only if the record shows "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(a)*. A factual dispute is genuine if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A factual dispute is material if resolving the factual issue might change the suit's outcome pursuant to the governing law. *Id.* The motion should be granted if no rational fact finder could return a verdict in favor of the non-moving party. *Id.* at 249.

When ruling on a motion for summary judgment, the Court must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in the non-moving party's favor. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). The moving party need not positively disprove the opponent's case; rather, the moving party must establish the lack of evidentiary support for the non-moving party's position. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). If the moving party meets this initial burden to survive summary judgment, the non-moving party must then present competent evidence to show that there is a genuine

issue for trial.  *Id.* at 324-26.  The essential question is "whether the evidence presents a sufficient disagreement to require the submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson,* 477 U.S. at 251-52.

## II.   CND's Negligence is the Proximate Cause of Plaintiff's Injury

CND caused Plaintiff's injury.  "Where the evidence is plain, the question of whether an act constitutes the intervening and superseding cause of an injury is a question of law." *Olympia Servs. v. Sherwin Williams Co.*, 480 S.E.2d 883, 885 (1997) (affirming summary judgment for defendant due to lack of proximate cause); *see also Weaver v. PACCAR, Inc.*, 52 F.Supp. 3d 1342, 1347 (S.D. Ga. 2014) (granting summary judgment for defendant where the dispute between the parties as to what caused plaintiff's injury was not a factual dispute but a dispute regarding "the legal conclusion that flows from the agreed upon facts").

An unforeseeable intervening act severs proximate cause. "For an intervening act 'to become the sole proximate cause of a plaintiff's injuries, the intervening act must not have been foreseeable[3] by [the] defendant, must not have been triggered by [the] defendant's act, and must have been sufficient by itself to cause the injury.'"

---

[3] In Georgia, "foreseeability means that which is objectively reasonable to expect, not merely what might occur." *Weaver v. PACCAR, Inc.*, 52 F. Supp. 3d 1342, 1347 (S.D. Ga. 2014) (quotations omitted).

*Zaldivar v. Prickett*, 774 S.E2d 688, 698 (2015) (quotations omitted); *see also Black v. Ga. S. & F.R. Co.*, 415 S.E.2d 705, 707 (1992) (stating same).

Here, Plaintiff agrees mixing room 2 was clean and the hot work permit was properly issued. (*See* Statement of Undisputed Material Fact ("SUMF"), ℙ 21). After the hot work permit was issued, however, CND opened a pipe and 30 gallons of wastewater poured onto the floor of mixing room 2. (*See Id.* at ℙℙ 32, 33). This event caused %LEL levels to increase. (*See Id.* at ℙ 34).

CND's negligence at this point severs proximate cause. As the hot work operator, Noel Dickerson was required to cease operations and notify management, the area supervisor, or the PAI[4] for reassessment of the situation if unsafe conditions develop. (*See Id.* at ℙℙ 39, 50; *see also* National Fire Protection Association (NFPA) 51B,[5] § 4.3). There is no dispute Dickerson should have metered or notified the PAI when liquid leaked out of the pipe. (*See Id.*, ℙℙ 39, 50, 51).

He did not. Dickerson did not notify PLZ to determine whether the liquid that came out of the pipe and spilled onto the floor was safe. (*See Id.* at ℙℙ 36, 37, 38, 54).

---

[4] PAI stands for "Permit Authorizing Individual" and is defined as "the individual designated by management to authorize hot work." *See* NFPA 51B, Section 3.3.8.

[5] The express purpose of NFPA 51B, "Fire Prevention During Welding, Cutting, and Other Hot Work," is to provide the "**minimum requirements** for all persons who manage, request, authorize, perform or supervise hot work." *See* NFPA 51B, Section 1.2 (emphasis supplied).

Dickerson did not check the %LEL levels of the liquid with the gas meter.  (*See Id.* at ¶¶ 36, 40-46).   Unforeseeably, Dickerson completely disregarded the minimum requirements set forth in the NFPA standards when the condition of the room changed.

Furthermore, there is no evidence PLZ did anything to prevent Dickerson from complying with his duty to notify PLZ of the spill or check %LEL levels with the gas meter.  Plaintiff's expert testified that only CND is to blame for their failure to use the gas meter to check the %LEL of the wastewater that came out of the pipe they opened (*See Id.* at ¶ 44).  There is no evidence PLZ triggered Dickerson's conduct.

Finally, Plaintiff's expert agrees Dickerson's failure to comply with the NFPA standards caused the accident:

> Q. …[D]on't you agree with me that if, when the water comes out of the pipe, Noel Dickerson takes his meter and puts it on there and it detects LELs, and he then does not light his torch, that this accident does not happen?
>
> A. I agree with you.

(*See Id.* at ¶ 45).

Dickerson's failure to comply with NFPA minimum requirements for fire prevention during hot work caused Plaintiff's injuries. PLZ is not liable as a matter of law.

### III.   PLZ Did Not Owe a Legal Duty to Plaintiff

PLZ did not owe any legal duty to Plaintiff because CND controlled the work in

16

mixing room 2 and PLZ did not have the right to control or direct Plaintiff's work. "Although property owners owe a duty to their own invitees, they owe no such duty to employees of or others invited upon the premises by an independent contractor hired to do work on the premises if two conditions exist: 1) the owner has relinquished possession of the premises, in whole or in part and 2) the owner does not have the right and does not actually control or direct the work done." *McClure v. Equitable Real Estate Inv. Mgmt.,* 392 S.E.2d 272, 273 (1990) (citation omitted); *see also Torrington Co. v. Hill,* 465 S.E.2d 447, 450 (1995). As set forth below, the undisputed facts establish PLZ relinquished the premises and did not control CND's work.

### A.     PLZ relinquished control of mixing room 2 to CND

The undisputed evidence shows that at the time of the fire, PLZ had relinquished control of mixing room 2 to CND. "Possession may be defined as having personal charge of or exercising the rights of management or control over the property in question." *Law v. Chemtall, Inc.,* 802 S.E.2d 408, 411 (2017) (citation and punctuation omitted).  Georgia law focuses on custody and control, and generally includes the "ability to control access to the premises and exclude others therefrom." *West v. Briggs & Stratton Corp.,* 536 S.E.2d 828, 833 (2000). "[T]he owner does not have to relinquish control over the entire property; it is sufficient if the owner surrenders possession and control over some portion of the property." *Ga. Power Co. v. Campbell,*

861 S.E.2d 255, 260 (2021) (citation omitted).

The undisputed evidence in this case demonstrates PLZ relinquished possession of mixing room 2 to CND once the hot work permit issued, and CND had custody and control over mixing room 2 during the period the hot work permit was in place. (*See* SUMF, ¶¶ 23-27).

CND CEO Noel Dickerson actively worked with PLZ to inspect and meter mixing room 2 and issue the hot work permit. (*See Id.* at ¶¶ 11-15, 17-20). PLZ turned the work site over to CND after the hot work permit issued and it was CND's responsibility to maintain the fire and air safety of that room while the hot work was being performed. (*See Id.* at ¶ 23). CND had authority to exclude third-party contractors from entering mixing room 2 while hot work was taking place. (*See Id.* at ¶ 26). No one from PLZ was in the room to monitor air quality for CND or supervise of any of CND's work. (*See Id.* at ¶¶ 24-27). CND had possession of the work area.

PLZ relinquished possession of mixing room 2 to CND, thus satisfying the first prong of the *McClure* test.

### B. PLZ did not control nor direct work done by CND

The second prong of *McClure* is satisfied because the undisputed evidence shows: 1) PLZ did not have the right to control or direct the work done by CND and 2) PLZ did not actually control CND's work.

With respect to the right of control, a contractor must show a right of supervision such that the contractor cannot do its work its way.

> It is not enough that the owner has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations.  Such a general right does not mean that the contractor is controlled as to his methods of work.  There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

*Kraft Gen. Foods v. Maxwell,* 464 S.E.2d 639, 641 (1995) (citation and punctuation omitted). There is no evidence PLZ retained a right of supervision such that CND was not free to do the work in its own way.

To the contrary, Plaintiff testified no employee or contractor of PLZ instructed Plaintiff as to how to do his job and no one at PLZ trained Plaintiff in any way as to how he should perform his job. (*See* SUMF¸ ¶ 3).  Additionally, no one at PLZ gave Plaintiff any instructions as to what materials he could or could not use on the job site in the performance of his duties.  (*See Id.).*  Plaintiff only received job direction and training of this kind from his brother, Noel Dickerson.  (*See Id.* at ¶ 4).

As PLZ relinquished possession of mixing room 2 to CND and did not control or direct the work of either CND or Plaintiff, PLZ owed no duty to Plaintiff and is therefore entitled to summary judgment.

## IV.    PLZ Owed No Duty to Plaintiff Because Plaintiff Was Hired to Perform Demolition Work

While the general rule is that a premises owner must exercise ordinary care to keep his premises safe for workers hired to work on the premises, the general rule does not apply if the worker "was hired for the express purpose of assisting in the repair, demolition, or alteration of some instrumentality . . . , and the unsafe conditions from which the injury arose from or were incidental to the work undertaken by him." *Forest Cove Apts. v. Wilson,* 776 S.E.2d 664, 669 (2015) (citation and punctuation omitted).  The general rule is also inapplicable if the worker is hired to perform work on the premises "that in its progress necessarily changes the character for safety of the place in which it is performed as the work progresses." *Id.* at 669 (citation and punctuation omitted); *see also Wilson v. Guy,* 848 S.E.2d 138, 144 (2020) (premises owner cannot be held liable, vicariously or otherwise, for injuries to independent contractors that were result of conditions created by the contractors themselves without any direction/instruction from the premises owner).

There is no dispute CND introduced the alleged hazardous wastewater into the environment of mixing room 2 as it was decommissioning the Facility.  If one is to believe Plaintiff's allegations that the liquid was flammable and dangerous, then CND's/Plaintiff's own work progress changed the condition of a room that had been certified as free from harmful gases. To make matters worse, neither Plaintiff nor CND

opted to utilize the meters in the room to determine the nature and makeup of the wastewater Plaintiff claims pooled around their very feet.

Plaintiff's injuries were undisputedly the result of conditions Plaintiff and CND created without any direction or instruction from PLZ and, therefore, PLZ is not liable.

## V.   Alternatively, PLZ Did Not Breach Any Duty That May Have Been Owed to Plaintiff

Even if PLZ owed a duty to Plaintiff, which PLZ denies, PLZ is still entitled to summary judgment as Plaintiff had superior knowledge of the alleged hazard, failed to exercise ordinary care, violated his own duty to inspect his workplace, and assumed the risk of his injury.

### A. PLZ did not have superior knowledge of the alleged hazard

It is well settled that "[a]n owner or occupier of land must exercise ordinary care to keep his premises safe for invitees." *Forest Cove,* 776 S.E.2d at 668 (quoting *Houston v. Wal-Mart Stores East, LP,* 749 S.E.2d 400, 402 (2011)); *See* O.C.G.A. § 51-3-1.  However,

> [t]he true ground of liability is the proprietor's *superior knowledge* of the perilous instrumentality and the danger therefrom to persons upon the property.  It is when the perilous instrumentality is *known to the owner* and *not known to the person injured* that a recovery is permitted.

*Carpenter v. Capital City Club,* 683 S.E.2d 351, 353 (2009) (citation and punctuation omitted; emphasis in original).

21

A plaintiff cannot recover if they have superior or equal knowledge of the risk, assumed the risk, or negligently created the risk. *Right Stuff Food Stores v. Gilchrist,* 632 S.E.2d 405, 406 (2006); *see also Norman v. Jones Lang LaSalle Ams., Inc.,* 627 S.E.2d 382, 387 (2006) (granting summary judgment for defendant where plaintiff and defendant had no knowledge of a hazard); *Pierce v. Wendy's Intl.,* 504 S.E.2d 14, 17 (1998) (granting summary judgment for defendant where plaintiff had superior knowledge of the hazard); *Nicholson v. Pike Nurseries,* 494 S.E.2d 214, 215 (1997) (granting summary judgment for defendant where plaintiff's knowledge of hazard was at least equal to defendant's knowledge).

The record here undisputedly shows PLZ did not have superior knowledge of the wastewater on the floor in mixing room. In fact, PLZ had absolutely no knowledge that CND had removed pipes and introduced a liquid into the environment in mixing room 2.  (*See* SUMF, ¶¶ 36-38). Plaintiff testified unequivocally that Noel Dickerson did not inform anyone at PLZ regarding the spilled wastewater and that the only people who knew about the spilled liquid were Noel Dickerson and the other men working in mixing room 2 – including Plaintiff.  (*See Id.* at ¶¶ 36-37).

As Plaintiff's knowledge regarding the alleged hazard was superior to that of PLZ's, PLZ is entitled to summary judgment.

### B. Had Plaintiff Exercised Ordinary Care, He Would Have Avoided Injury

Under Georgia law, a plaintiff must exercise ordinary care for his or her own safety and must by the same degree of care avoid the effect of the defendant's negligence after it becomes apparent to the plaintiff or, in the exercise of ordinary care, he or she should have learned of it. *McGrew v. S. S. Kresge Co.,* 230 S.E.2d 119, 121 (1976); *see also King Hardware Co. v. Teplis,* 84 S.E.2d 686, 687 (1954). The plaintiff must "make use of all his senses in a reasonable measure amounting to ordinary care in discovering and avoiding those things that might cause hurt to him." *Id.* The "issue is whether, taking into account all the circumstances existing at the time and place of the [incident], the invitee exercised the prudence the ordinarily careful person would use in a like situation." *Robinson v. Kroger Co.,* 493 S.E.2d 403, 414 (1997). Here, Plaintiff undisputedly failed to take any safety precautions after the wastewater entered mixing room 2. Plaintiff failed to exercise ordinary care.

### C. Plaintiff Violated His Own Duty to Inspect His Workplace

Under Georgia law, "[a]n independent contractor is expected to determine for himself whether his place of employment is safe or unsafe, and ordinarily may not recover against the owner for injuries sustained in the performance of the contract." *Carpenter,* 683 S.E.2d at 353. An independent contractor has a duty to inspect his work area and cannot impose liability on the premises owner for a defect which the

contractor also failed to notice.  *Id.*; *see also Hudson v. Santangelo*, 492 S.E.2d 673, 678 (1997) (holding plaintiff had a duty to inspect deck and railing area where he was working and could not hold homeowner liable for a defect plaintiff failed to notice). Further, the Court in *West v. Briggs & Stratton Corp.* noted that "[t]he issue is whether taking into account all the circumstances existing at the time and place of the [incident], the invitee exercised the prudence the ordinarily careful person would use in a like situation."  *West,* 536 S.E. 2d at 834-35.

As discussed, the presence of liquids introduced into mixing room 2 put Plaintiff and CND on notice of a material change to the condition of their work environment.  (*See* Brief in Support of Motion for Summary Judgment, *supra*, at pp. 14-16, 20-21).  Despite having access to meters that could have prevented the fire, Plaintiff and CND chose to not take any safety precautions whatsoever before lighting the torch that ultimately caused the fire. Such actions do not demonstrate the exercise of prudence the ordinarily careful person would take in a like situation and PLZ is entitled to summary judgment accordingly.

### D. Plaintiff Assumed the Risk of His Injuries

A plaintiff who assumes a risk must possess actual knowledge "of the specific, particular risk of harm associated with the activity or condition that proximately causes the injury." *Wright v. Ariz. Chem. Co.,* 2010 U.S. Dis. LEXIS 19431, *12.

Here, Plaintiff had actual knowledge of the risk of a chemical fire. His brother and employer had just completed an inspection of mixing room 2 to check for flammable fumes and signed the Fire Watch Signoff on the hot work permit stating the "[w]ork area and all adjacent areas to which sparks and heat might have spread were inspected during the watch period and were found fire safe." (*See* Hot Work Permit, attached as Exhibit "5"). CND utilized a gas meter throughout the workday to monitor the air quality and safety of the work environment.  (*See* N. Dickerson Affid., ¶ 9, attached as Exhibit "2"; Pl. Dep., p. 55:10-23, attached as Exhibit "1").  Plaintiff was on fire watch at the time the fire started. (*See* Pl. Dep, at pp. 84:6-85:1). These safety measures were taken solely for the purpose of acknowledging, and avoiding, the risk of a fire or explosion.

Both CND and Plaintiff assumed the risk of fire when they introduced wastewater into mixing room 2 and opted not to test the wastewater to determine if it was flammable before lighting the torch and beginning the hot work.  Summary judgment is proper under these circumstances.

## CONCLUSION

For the foregoing reasons, PLZ Corp. respectfully requests that the Court GRANT its Motion for Summary Judgment and DISMISS WITH PREJUDICE Plaintiff's claims against it in this matter.

Respectfully submitted this 14th day of April, 2022.

|                                        | /s/ Robert W. Hoskyn                  |
|----------------------------------------|---------------------------------------|
| Lewis, Brisbois, Bisgaard & Smith, LLP | R. Scott Masterson                    |
| 600 Peachtree Street                   | Georgia Bar No. 476356                |
| Suite 4700                             | Robert W. Hoskyn                      |
| Atlanta, Georgia 30308                 | Georgia Bar No. 368375                |
| T: (404) 476-2012                      |                                       |
| F: (404) 467-8845                      | *Attorneys for Defendant PLZ Corp.*   |
| scott.masterson@lewisbrisbois.com      |                                       |
| robert.hoskyn@lewisbrisbois.com        |                                       |

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned hereby certifies that the foregoing pleading complies with the font and point selections approved by the Court in Local Rule 5.1B.  This brief has been prepared in Times New Roman font, 14 point.

By:<u>/s/ Robert W. Hoskyn</u>
Robert W. Hoskyn
Georgia Bar No. 368375

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day filed the within and foregoing **DEFENDANT PLZ CORP.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** via CM/ECF System upon all parties, which will automatically send a copy of the foregoing to all counsel of record, as follows:

Michael L. Goldberg
Eric J.D. Rogers
Fried Goldberg LLC
Three Alliance Center
3350 Lenox Road, N.E.
Atlanta, Georgia 30326

Thomas B. Ward
Freeman Mathis & Gary, LLP
100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339

Respectfully submitted this 14th day of April, 2022.

|  |  |
|---|---|
| | _/s/ Robert W. Hoskyn_ |
| Lewis, Brisbois, Bisgaard & Smith, LLP | R. Scott Masterson |
| 600 Peachtree Street | Georgia Bar No. 476356 |
| Suite 4700 | Robert W. Hoskyn |
| Atlanta, Georgia 30308 | Georgia Bar No. 368375 |
| T: (404) 476-2012 | |
| F: (404) 467-8845 | _Attorneys for Defendant PLZ Corp._ |
| scott.masterson@lewisbrisbois.com | |
| robert.hoskyn@lewisbrisbois.com | |