# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| BRIAN DICKERSON,<br><br>Plaintiff,<br><br>vs.<br><br>PLZ AEROSCIENCE CORPORATION n/k/a PLZ CORP. and HAZMAT EMERGENCY RESPONSE AND REMEDIATION, INC.,<br><br>Defendants. | CIVIL ACTION<br><br>FILE NO.: 1:20-cv-03618-MHC |

### DEFENDANT PLZ CORP.'S
### STATEMENT OF UNDISPUTED MATERIAL FACTS AS TO
### WHICH THERE IS NO GENUINE ISSUE FOR TRIAL

COMES NOW Defendant PLZ Corp. ("PLZ"), and hereby files this Statement of Undisputed Material Facts as to Which There Is No Genuine Issue for Trial in support of its Motion for Summary Judgment, showing this Honorable Court as follows:

**Statement of Undisputed Material Facts**

1.

At all relevant times, CND Services, LLC ("CND") employed Plaintiff to install and decommission various facility sites. (*See* Brian Dickerson Deposition Transcript ("Pl. Dep."), p. 14:1-20).

2.

DG Marshall Associates, Inc., hired CND to provide limited services in connection with the decommissioning of PLZ's facility located in Dalton, Georgia (the "Facility"). (*See* Affidavit of Noel Dickerson ("N. Dickerson Affid."), ¶ 3).

3.

PLZ did not train Plaintiff or tell Plaintiff which materials to use onsite. (*See* Pl. Dep., p. 62:1-11).

4.

Noel Dickerson, Plaintiff's employer, provided Plaintiff with all training or other information regarding performing his job and equipment to be used. (*See Id.* at p. 62:14-18).

5.

Noel Dickerson is the CEO of CND Services, LLC. (See N. Dickerson Affid., ¶ 2).

6.

CND began work at the Facility on January 6, 2020 and this work included cutting and grinding metal using saws, welding torches, metabo, and cut-off blades. (*See* N. Dickerson Affid., ¶ 3; Pl. Dep., p. 24:4-12).

7.

This type of work is known as "hot work." (*See* N. Dickerson Affid., ¶ 3).

8.

PLZ contracted with Defendant Hazmat Emergency Response and Remediation, Inc. ("HERR") to remove flammable liquids and hazardous substances from the Facility, including the flushing of all the lines and tanks in the Facility. (*See* Plaintiff's Complaint, ¶ 7; PLZ's Answer, ¶ 7; Dewayne Miller Deposition Transcript ("Miller Dep."), pp. 31:18-32:14).

9.

On February 5, 2020, Plaintiff was working at the Facility. (*See* Plaintiff's Complaint, ¶ 5; PLZ's Answer, ¶6).

10.

Also on that day, CND was scheduled to perform hot work in mixing room 2 at the Facility. (*See* N. Dickerson Affid., ¶ 5).

11.

Part of the hot work permitting process involved a walk-through inspection

of mixing room 2 by Dewayne Miller, PLZ's Health, Safety, and Environmental Manager, and Noel Dickerson of CND. (*See* N. Dickerson Affid., ¶ 6; Miller Dep., pp. 15:10-14, 50:14-18).

12.

During the walk-through, both Mr. Miller and Noel Dickerson had multi-gas meters that they used to take readings in mixing room 2. (*See* N. Dickerson Affid., ¶6; Miller Dep., p. 52:11-16).

13.

The meter Noel Dickerson used on behalf of CND was a GasAlert Microclip made by Honeywell. This is an industry standard four-gas detector model that measures the %LEL (lower explosive limit) percentages of various gases, oxygen, hydrogen sulfide, and carbon monoxide. (*See* N. Dickerson Affid., ¶6).

14.

During the walk-through, both Mr. Miller and Noel Dickerson took meter readings at various levels, including chest and floor levels, in mixing room 2. (*See Id.* at ¶ 7).

15.

Specifically, Mr. Miller did the following during the walk-through with Noel Dickerson:

- Entered the room and took readings at chest height and ground level.

- ○ Stood up, moved forward about 8-12 feet and repeated the process.

- ○ Checked the base of any tanks in mixing room 2 and put the meter up to any valves to take readings.

- ○ Opened any pipes in the mixing room to take readings.

- ○ Went up on the mezzanine and opened all tanks and placed meter inside of same to take readings.

- ○ Proceeded to east side of room and opened the valves on all pipes on that side of the room and took readings. Once a pipe was cleared, Mr. Miller would close the valve and go to the next one.

- ○ After completing this process Mr. Miller wrote down his data and posted the hot work permit.

(*See* Miller Dep., pp. 51:4-52:10).

16.

During the walk-through process, neither the meter Mr. Miller used nor the CND meter detected any harmful conditions, including the presence of explosive gases or elevated oxygen levels. (*See* N. Dickerson Affid., ¶ 7; Miller Dep., p. 53:15-19).

17.

In addition, both Mr. Miller and Noel Dickerson inspected the hot work equipment and Mr. Dickerson signed off on the inspection indicating that the hot

work equipment was in good repair.  (Bryan Durig Deposition Transcript Vol. II ("Durig Dep. II"), pp. 42:2-43:6).

18.

Both Mr. Miller and Noel Dickerson permitted CND to perform hot work in mixing room 2.  (*See* N. Dickerson Affid., ¶ 8; Hot Work Permit; Durig Dep. II, pp. 35:24-37:12).

19.

Noel Dickerson verified "the above location has been examined, the precautions checked on the Required Precautions Checklist have been taken to prevent a fire, and permission is authorized for this work."  (*See* Hot Work Permit).

20.

Mr. Dickerson also executed the Fire Watch Signoff on the hot work permit stating the "[w]ork area and all adjacent areas to which sparks and heat might have spread were inspected during the watch period and were found fire safe." (*See Id.*).

21.

Plaintiff's own expert agrees PLZ and CND followed appropriate procedures in issuing the hot work permit and that, at that time, mixing room 2 was "clean." (See Durig Dep. II, pp. 33:23-34:12; 43:2-6).

22.

In other words, when PLZ turned over the room to CND, it had done

everything it was supposed to have done. (See *Id.*).

23.

Once the hot work permit issued to CND, PLZ turned over custody and control of mixing room 2 to CND and it was CND's responsibility to maintain the safety of that room while the hot work was being performed. (*See* Miller Dep., p. 82:21-25; Affidavit of Dewayne Miller ("Miller Affid."), ¶ 5).

24.

Part of this responsibility involved CND monitoring air quality to keep the people in the area safe. (*See* Pl. Dep., p. 80:8-15).

25.

CND had no expectation that any PLZ personnel would be in the work area with CND monitoring the safety of CND's employees. (*See Id*. at p. 80:16-18).

26.

Indeed, no PLZ personnel entered mixing room 2 while the hot work was being performed and CND had authority to exclude other third-party contractors from entering mixing room 2 while the hot work was taking place. (*See* Miller Affid., ¶ 6).

27.

CND used meters to monitor the air quality during the workday in mixing room 2. (*See* N. Dickerson Affid., ¶ 9; Pl. Dep., p. 55:10-23).

28.

One of the meters CND used on the day in question was brand new and Plaintiff took it out of the box and handed to Noel Dickerson who took it into mixing room 2 when he began work. (*See* Pl. Dep., pp. 56:17-25, 58:4-6, 59:1-12).

29.

Neither of the meters CND used in mixing room 2 on February 5, 2020 detected any harmful chemicals. (*See* N. Dickerson Affid., ¶ 9; Pl. Dep., p. 87:21-22).

30.

Plaintiff testified he does not know if Noel Dickerson was taking periodic readings with his meter in mixing room 2 every 15 minutes on the day in question, but he should have been. (*See* Pl. Dep., pp. 131:25-132:14).

31.

Continuous monitoring is required because conditions can change during the course of hot work that may cause an increase in %LEL in the environment. (*See* Durig Dep. II, pp. 50:21-51:2; 64:16-19).

32.

At some point during the workday, Noel Dickerson was removing pipes in mixing room 2 with a pipe wrench and wastewater allegedly came out of the pipes and pooled on the ground. (*See* Pl. Dep., p. 107:11-20).

33.

Plaintiff estimated that 30 gallons of wastewater accumulated 3-4 inches deep on the floor of mixing room 2. (*See Id*. at p. 125:6-10, 21-23).

34.

The introduction of the wastewater into mixing room 2 raised the %LEL causing a change in the room's condition. (*See* Durig Dep. II, p. 45:14-22).

35.

Despite the size of the alleged pool of wastewater, Plaintiff and other CND personnel were not concerned and took no steps to wash off the water or dilute it. (*See* Pl. Dep., pp. 123:19-21, 124:13-21; 125:11-13, 128:24-129-2).

36.

Noel Dickerson likewise took no safety precautions regarding the wastewater: he did not inform PLZ of the spill, nor did he test the water with his meter or otherwise to make sure the liquid was not combustible before he lit his torch and continued the hot work. (*See Id.* at pp. 108:6-15, 110:15-24; Durig Dep. II*,* p. 71:13-18).

37.

Only Noel Dickerson and the other CND personnel in mixing room 2 that day knew about the wastewater spill. (*See* Pl. Dep*.,* p. 110:11-21).

38.

As PLZ was not notified of the event that changed the %LEL, it had no opportunity to determine whether the liquid that came out of the pipe and spilled onto the floor was safe.  (*See* Durig Dep. II, pp. 45:14-22; 84:2-7).

39.

According to Plaintiff's expert, Dr. Bryan Durig, the NFPA safety standards required Noel Dickerson, as the hot work operator, to cease hot work operations if unsafe conditions developed and notify someone at PLZ about the spill to reassess the situation in mixing room 2. (*See Id.* at pp. 66:4-19; 67:9-15; 94:20-95:8).

40.

Had Noel Dickerson tested the wastewater with his meter, it would have detected any combustible fumes. (*See* Pl. Dep., pp. 110:25-111:6; Durig Dep. II, pp. 51:3-16; 52:1-14).

41.

Despite the presence of approximately 30 gallons of what Plaintiff contends were highly flammable chemicals on the floor of mixing room 2, none of the meters that CND had present in that room alerted to any harmful conditions.  (*See* Pl. Dep, pp. 107:21-108:5).

42.

There is no dispute the meters CND was using on February 5, 2020 were

operational and running and if combustible gases had been present the meters should have alarmed. (*See Id.*).

43.

Either CND's meter was not where it should have been located to detect elevated %LEL or it was not operating properly at the time the liquid was introduced into mixing room 2 by CND. (*See* Durig Dep. II, pp. 51:3-16; 53:6-54:8).

44.

Plaintiff's own expert testified it was CND's fault they did not take the multi gas meter and measure the %LEL of the wastewater that came out of the pipe they opened during hot work. (*See Id.* at p. 54:4-8).

45.

Plaintiff's expert testified, had Noel Dickerson measured the %LEL of the wastewater that came out of the pipe, it would have detected elevated %LELs, and had Dickerson then not lit his torch, this accident would not have happened. (*See Id.* at pp. 52:1-14; 95:17-24).

46.

Instead, despite the presence of approximately 30 gallons of untested wastewater standing in a pool on the floor of mixing room 2, Noel Dickerson proceeded to light his torch and resume the hot work. (*See* Pl. Dep, p. 108:6-15).

47.

Plaintiff was on fire watch. (*See Id.* at pp. 84:6-85:1).

48.

When he did return to cutting with his torch, a piece of slag fell from the mezzanine where he was working and dropped to the floor resulting in a flash fire that lasted approximately 6 seconds. (*See Id.* at pp. 90:3-9, 91:21-92:8).

49.

As a result of the fire, Plaintiff received burns to his knees, back and neck. (*See Id.*, p. 93:6-14).

50.

Plaintiff's expert testified NFPA 51B, "Fire Prevention During Welding, Cutting, and Other Hot Work," required Noel Dickerson, as the hot work operator, to cease hot work if unsafe conditions develop and notify management, the area supervisor, or the PAI for reassessment. (*See* Durig Dep. II, at p. 66:4-19; 67:9-15).

51.

The standards required Noel Dickerson to get the PAI's approval to proceed when conditions change. (*See Id.* at pp. 64:20-25; 81:23-82:2).

52.

The NFPA standards are designed to prevent hot work operators from making assumptions about whether an area is safe for hot work. (*See Id.* at p. 74:3-

13).

53.

Noel Dickerson was required to comply with the standards and not assume a changed condition is safe. (*See Id.* at pp. 56:15-25; 74:3-13).

54.

Noel Dickerson did not notify anyone 30 gallons of flammable wastewater spilled onto the ground underneath where he was doing hot work. (*See Id.* at p. 67:16-24).

55.

As Plaintiff's expert testified, Noel Dickerson assumed the water was safe, but unfortunately it was not. (*See Id.* at pp. 74:14-75:4).

Respectfully submitted this 14th day of April, 2022.

|  | LEWIS, BRISBOIS, BISGAARD & SMITH, LLP |
|---|---|
|  | */s/ Robert W. Hoskyn* |
| 600 Peachtree Street | R. Scott Masterson |
| Suite 4700 | Georgia Bar No. 476356 |
| Atlanta, Georgia 30308 | Robert W. Hoskyn |
| T: (404) 476-2012 | Georgia Bar No. 368375 |
| F: (404) 467-8845 | *Counsel for Defendant PLZ Corp.* |
| scott.masterson@lewisbrisbois.com |  |
| robert.hoskyn@lewisbrisbois.com |  |

## **CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies that the foregoing pleading complies with the font and point selections approved by the Court in Local Rule 5.1B.  This submission has been prepared in Times New Roman font, 14 point.

By: <u>/s/ Robert W. Hoskyn</u>
Robert W. Hoskyn
Georgia Bar No. 368375

## CERTIFICATE OF SERVICE

I hereby certify that I have this day filed the within and foregoing **DEFENDANT PLZ CORP.'S STATEMENT OF UNDISPUTED MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE FOR TRIAL** via CM/ECF System upon all parties, which will automatically send a copy of the foregoing to all counsel of record, as follows:

Michael L. Goldberg
Eric J.D. Rogers
Fried Goldberg LLC
Three Alliance Center
3350 Lenox Road, N.E.
Atlanta, Georgia 30326

Thomas B. Ward
Freeman Mathis & Gary, LLP
100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339

Respectfully submitted this 14th day of April, 2022.

|  |  |
|---|---|
|  | /s/ Robert W. Hoskyn |
|  | R. Scott Masterson |
|  | Georgia Bar No. 476356 |
|  | Robert W. Hoskyn |
| Lewis, Brisbois, Bisgaard & Smith, LLP | Georgia Bar No. 368375 |
| 600 Peachtree Street |  |
| Suite 4700 | *Attorneys for Defendant PLZ Corp.* |
| Atlanta, Georgia 30308 |  |
| T: (404) 476-2012 |  |
| F: (404) 467-8845 |  |
| scott.masterson@lewisbrisbois.com |  |
| robert.hoskyn@lewisbrisbois.com |  |